## McBETH *v.* THE STATE.

1. In a case where the evidence relied on by the State for a conviction tends to show that the accused committed murder, whereas the statement of the accused and the evidence introduced in his behalf sustain his defense of justifiable homicide, it is error for the court to give in charge to the jury the law relating to voluntary manslaughter, and a verdict finding the accused guilty of that offense can not be upheld.

2. There is no merit in the complaint that the charge on the subject of reasonable doubt was not sufficiently comprehensive.

Argued April 17, — Decided May 10, 1905.

Indictment for murder. Before Judge Bartlett. Haralson superior court. March 23, 1905.

Adolphus McBeth was tried for the murder of Henry Vaughn. The homicide occurred on Christmas night, near the house of Jim

Cammond.    There was a "frolic" at the house that night.    The deceased accompanied one Lula Washington, a married woman, and arrived at the party in advance of the defendant.    The deceased carried a Winchester rifle, and the defendant carried a double-barreled breech-loading shotgun.    From the witnesses who testified in behalf of the State (most of whom were near relatives) it appeared that the deceased and the defendant were seemingly on friendly terms, neither seemed to be angry, and nothing was said by either to indicate bad feeling or to presage a deadly encounter.    The defendant left the house between ten and eleven o'clock, and just before leaving invited the deceased to come out.    Soon afterward the deceased went out.    The two men carried their guns with them.    Within two to five minutes after the deceased left the house, the witnesses heard two reports from a gun.    They seemed to be the reports of a shotgun and not a rifle.    When the witnesses reached the deceased he was wounded, and he remarked to one of the witnesses that the defendant had shot him for nothing.    The wound was inflicted by the shooting of a gun, and caused his death.    Immediately after the shooting the defendant ran away.    He was arrested at Plant City, Florida.    The accused offered evidence that three shots were fired, and that the report of the first gun indicated it was a rifle.    A rifle-cartridge shell was picked up, the night of the homicide, at the place where the deceased fell.    The shell had blood on it.    Several witnesses testified as to the good character of the accused.    In his statement he said that the deceased, in a manner detailed by him, attempted, while in the house, to involve him in a difficulty, but that he refused to take notice or resent the remarks of the deceased, because he appeared to be intoxicated.    To prevent trouble he started home, and when he reached the door, the sister of the deceased took hold of the deceased, who said to her, "Turn me loose, God damn it, I know my business."    The defendant closed the door after him as he left the house and started home.    The deceased immediately came out of the house, and as soon as he got on the steps he presented his rifle at the defendant and said, "Halt! put down your gun."    The defendant proceeded in the direction of his home, when the deceased repeated the command.    The deceased then came within three or four steps of the defendant, and said, "Put it down, you

damn son of a bitch; I will kill you." Then the deceased fired, and the defendant quickly turned and fired twice. The defendant explained his flight to Florida by saying that he was afraid the relatives of the deceased might do him violence if he remained in the community. He was convicted of voluntary manslaughter, and complained in his motion for a new trial, in addition to the usual grounds, that the court erred in charging the law of voluntary manslaughter, and on the subject of reasonable doubt as to the defendant's guilt. A new trial was refused, and the defendant excepted.

*W. R. Hutcheson, James Beall,* and *W. D. Hamrick,* for plaintiff in error. *W. K. Fielder, solicitor-general, R. T. Williams,* and *E. S. Griffith,* contra.

EVANS, J. (After stating the facts.) The jury could have drawn the inference, from the evidence of the prosecution, that the deceased was called out of the house and deliberately shot down. If this was the truth of the case, the homicide would be murder. On the other hand, if the statement of the defendant truly presented the history of the occurrence, the homicide was justifiable. There was nothing in the evidence to support a theory of mutual combat or that the homicide was the result of a heat of passion. The offense of voluntary manslaughter was not involved, and neither the evidence nor the defendant's statement, singly or conjointly, presented a theory on which a charge of voluntary manslaughter could be based. Under such circumstances it was error for the court to give the jury a charge to the effect that they might find the defendant guilty of voluntary manslaughter, and the verdict finding the defendant guilty of that offense is contrary to the evidence. *Berry* v. *State,* 122 *Ga.* 429; *Tolbirt* v. *State,* 119 *Ga.* 970.

2. There is no merit in the complaint that the charge on the subject of reasonable doubt was not sufficiently comprehensive. The court instructed the jury that the defendant was presumed to be innocent, and that the burden was on the State to remove that legal presumption of innocence by proving the guilt of the accused beyond a reasonable doubt.

*Judgment reversed. All the Justices concur, except Candler J., absent.*