27768. GIBSON v. McWHIRTER et al.

Argued March 12, 1973 — Decided May 10, 1973.

Henson & Waldrep, Kenneth M. Henson, Joseph L. Waldrep, Jack O. Morse, for appellant.

William B. Hardegree, Hatcher, Stubbs, Land, Hollis & Rothschild, James Humes, for appellees.

JORDAN, Justice. 1. Inasmuch as Division 3 of this opinion, infra, supports a judgment of affirmance, no ruling is made or required on any issue of whether the appeal is subject to dismissal as premature or not involving a properly certified interlocutory order. See *City of Hawkinsville v. Williams,* 185 Ga. 396 (1) (195 SE 162); *Littlegreen v. Gardner,* 208 Ga. 523 (1) (67 SE2d 713); *Hunter v. Ogletree,* 212 Ga. 543, 544 (93 SE2d 717); *Johnston v. Clayton County Water Authority,* 222 Ga. 39 (4) (148 SE2d 417); *Hodges v. Thibadeau,* 122 Ga. App. 334 (2) (177 SE2d 127).

2. It is unnecessary to consider the third and fourth enumerations, the appellant having conceded by brief that the only issue for determination is the construction of the will.

3. In determining whether the trial judge properly construed the will we note at the outset that the appellant and the appellees are in agreement in their briefs that the trial judge properly ruled that the terms of the will are clear and unambiguous, and that the will should be construed without reference to parol or extrinsic evidence. We agree with this position. This leaves as the controlling issue resolution of the

contention of the appellant that the trial judge misconstrued the will, in that the testator intended that his widow should receive one-half of the gross estate under Item Five without deduction for the payment of debts as provided in Item Two or the specific legacies in Items Three and Four.

In an early case Judge Lumpkin stated: "Here, then, I repeat, are parts of the instrument which, if they stood alone, would seem clearly to sustain either construction which is sought to be put upon it. It becomes our duty then, to seek, through the whole paper, for the testator's intention, and to carry that intention into effect, provided it can be done without violating any rule of law. And I will here take occasion to remark, that [it] is in vain to look at the books for precedents to aid us in arriving at a correct conclusion as to the intention of the testator. This duty must be performed by every court for itself, in each particular case." *Cook v. Weaver,* 12 Ga. 47, 50. "The intention of the testator must govern the construction of his will, if legal; and this intention may be conclusively shown by the unambiguous words of his will." *Hertz v. Abrahams,* 110 Ga. 707, 708 (36 SE 409, 50 LRA 361). "Precedents or decisions of other courts are of but little value and of dangerous application in the determination of the testator's intent in a particular will." *Hungerford v. Trust Co. of Ga.,* 190 Ga. 387, 389 (9 SE2d 630). "In construing the provisions of an item of a will, the whole instrument should be examined...[T]he intention of the testator is the controlling consideration, and his intention must be ascertained by taking the will, as it is said, 'by the four corners,' and giving to all parts of it consideration." *Yerbey v. Chandler,* 194 Ga. 263, 265 (21 SE2d 636). Viewing the whole of a will a later provision will prevail over an earlier provision only if the two provisions are irreconcilable. *Rigdon v. Cooper,* 203 Ga. 547 (47 SE2d 633).

We think it is clear that the testator, in providing for

disposition of the residuum to his sisters in Item Six had already "otherwise directed" the payment of his debts under the provisions of Item Two, thereby excluding application of the provisions of Code Ann. § 113-821 for payment out of the residuum unless otherwise directed. Viewing Items Two through Six together we find nothing irreconcilable in respect to any later provision over any earlier provision. By Item Two, having already provided for his burial in Item One, he made clear that in settling and disposing of his estate he wanted all debts paid "as soon as practical, consistent with the best interest of his estate," and then proceeded to define "debts" in the broadest possible language, first specifically to include all manner of usual and ordinary debts and expenses pertaining to the settlement of an estate, and then generally with a "catch-all" provision for "all other debts of every kind and character due by me at the time of my death or by my estate." About the only thing he did not do, if there were a need, was to state specifically that his debts were to be paid from his gross estate and not from the residuum, but this would, in our opinion, be stating the obvious, for the statute, supra, provides that debts are paid out of the residuum unless otherwise directed. If he intended for his debts to be paid out of the residuum, then Item Two is wholly unnecessary and could have been omitted from the will.

Further viewing the whole, i.e., Items Two through Six, we think it is clear that the testator directed his co-executrices to pay his debts as the first order of business in disposing of his estate, recognizing and protecting, of course, the specific legacies in Items Three and Four, leaving for distribution under Item Five one-half of all remaining property to his widow, but only to the extent that the property would qualify as a marital deduction under federal law, the remaining one-half to be distributed to his two sisters under Item Six. In brief, as we view the will, and as construed by the trial judge, the

widow under Item Five and the two sisters together under Item Six are to receive equal shares of the estate, provided everything the widow receives thereunder qualifies for a marital deduction.

*Judgment affirmed. All the Justices concur.*